# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LORENZO BREATH, | ) |
| Plaintiff, | ) ) ) |
| v. | )  Case No. CIV-14-444-HE ) |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

## REPORT AND RECOMMENDATION

Plaintiff Lorenzo Breath brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. United States District Judge Joe Heaton has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. Having reviewed the administrative record (Doc. No. 9, hereinafter "R. __") and the parties' arguments and authorities, the undersigned recommends that the Commissioner's decision be affirmed.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed his DIB application on September 29, 2011, seeking benefits on the basis of problems with his back/bulging disc and knees, diabetes, hypertension, numbness in legs, and impotence. R. 123-31, 149, 157. Following initial

denial of his application and an administrative hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision on January 7, 2013. R. 19-29, 34-49, 52-60.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of June 16, 2011. R. 21; *see* 20 C.F.R. § 404.1571. At step two, the ALJ determined that Plaintiff had the severe impairments of lumbar disc injury, diabetes mellitus, and essential hypertension. R. 21; *see* 20 C.F.R. § 404.1520(c). At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 21-22; *see* 20 C.F.R. § 404.1520(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his impairments. R. 22-28; *see* 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ found that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he could only occasionally stoop, kneel, and crouch." R. 22. The ALJ determined at step four that Plaintiff was capable of performing his past relevant work as a manager trainee, which was light and skilled, with an SVP of 6. R. 28.

Although the ALJ's step-four finding dictated a determination that Plaintiff was not disabled, the ALJ additionally undertook a step-five analysis of whether there are jobs existing in the national economy that Plaintiff—in light of his age, education, work experience, and RFC—can perform. R. 28-29; *see* 20 C.F.R. § 404.1520(a)(4). Taking into consideration a vocational expert's testimony at the administrative hearing regarding the

degree of erosion to the light unskilled occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform light unskilled occupations such as merchandise marker, storage rental clerk, and deli worker, and that such occupations offer jobs that exist in significant numbers in the national economy. R. 29; *see* R. 43-44 (vocational expert identifying these three jobs pursuant to the ALJ's hypothetical at the hearing); 20 C.F.R. § 404.1545(a)(5)(ii).

Plaintiff's request for review of this decision was denied by the SSA Appeals Council on March 11, 2014. R. 1-6, 193-95. Thus, the ALJ's unfavorable decision stands as the Commissioner's final determination of Plaintiff's DIB application. *See* 20 C.F.R. § 404.981. Plaintiff now appeals.

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met.

3

*Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ANALYSIS

On appeal, Plaintiff asserts that three alleged errors resulted in the ALJ's denial of benefits being unsupported by substantial evidence. First, Plaintiff alleges that the ALJ failed to consider Plaintiff's obesity as required by Social Security Ruling ("SSR") 02-1p. Pl.'s Br. (Doc. No. 11) at 4-7; *see* SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002). Second, Plaintiff challenges the propriety of the credibility assessment undertaken by the ALJ in the course of reaching the RFC determination. Pl.'s Br. at 7-8. And third, Plaintiff argues that the ALJ improperly considered opinions from certain of Plaintiff's treating and examining physicians that were issued prior to the alleged date of onset of Plaintiff's disability. Pl.'s Br. at 8-9. The undersigned addresses each argument in turn.

A. *Plaintiff's Obesity*

Plaintiff first argues that the ALJ "never discussed the issue of obesity" in the written decision. Pl.'s Br. at 4. To the contrary, the ALJ specifically addressed Plaintiff's obesity multiple times. *See* R. 25 ("[P]rior to his alleged onset date [Plaintiff] was treated . . . for . . . exogenous obesity . . . ."), 27 ("The medical records indicate that the claimant is obese . . . ."). The ALJ also discussed Plaintiff's height and weight, the factors that inform a conclusion of obesity, throughout his decision. *See* R. 22 ("Upon consultative examination,

he was 72 inches tall, weighed 359 pounds and was in no acute distress."), 23 ("He weighs 345 pounds."), 25 ("Upon examination he was 72 inches tall, weighed 359 pounds with blood pressure of 157/98."). *See generally* SSR 02-1p, 2002 WL 34686281, at *2 (explaining that obesity is generally shown through Body Mass Index or "BMI," which "is the ratio of an individual's weight in kilograms to the square of his or her height in meters").

Plaintiff further contends that the ALJ improperly neglected to consider the effects of Plaintiff's obesity upon Plaintiff's ability to work, thereby failing to comply with the requirements of SSR 02-1p and rendering the ALJ's RFC assessment and consequent determinations unsupported by substantial evidence. Pl.'s Br. at 4-7. The undersigned disagrees, finding that the ALJ adequately considered Plaintiff's obesity and, alternatively, that any technical noncompliance with SSR 02-1p was harmless in this case.

The ALJ did not find at step two that obesity was a medically determinable impairment, either severe or not severe, and Plaintiff does not challenge this nonfinding on appeal. *See* R. 21; Pl.'s Br. at 4-7. Plaintiff's concession of this point significantly undermines his argument that the ALJ erred by not adhering to SSR 02-1p, since application of that Ruling's directive regarding an ALJ's evaluation of obesity is premised upon the claimant's condition of obesity amounting to a medically determinable impairment for that claimant. *See* SSR 02-1p, 2002 WL 34686281, at *1, *3, *4-5, *7. Solely for purposes of this analysis, however, the undersigned assumes that Plaintiff's obesity constitutes either a severe or nonsevere medically determinable impairment, such that the ALJ was obligated to comply with SSR 02-1p in assessing that impairment's effects upon Plaintiff. *See id.* at *4 n.3 ("As with all impairments, to establish a finding of disability based on obesity, in whole

5

or in part, the statutory duration requirement must be satisfied."); 20 C.F.R. § 404.1509 (stating that an impairment "must have lasted or must be expected to last for a continuous period of at least 12 months"); SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996) ("At step 2 of the sequential evaluation process, an impairment or combination of impairments is considered 'severe' if it significantly limits an individual's physical or mental abilities to do basic work activities; an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.").

Pursuant to SSR 02-1p, "the combined effects of obesity and other impairments can be greater than the effects of each single impairment considered individually," and an ALJ is required to consider a claimant's obesity and such combined effects when assessing RFC. *Fagan v. Astrue*, 231 F. App'x 835, 837 (10th Cir. 2007) (citing SSR 02-1p, 2002 WL 34686281). Here, in deciding that Plaintiff could perform light work, subject to several nonexertional limitations, the ALJ not only referenced Plaintiff's obesity, height, and weight, but also assigned "great weight" to the opinions of Plaintiff's treating and examining opinions—several of whom expressly noted Plaintiff's obesity and/or height and weight in reaching those opinions. R. 22, 23, 25, 27; *see, e.g.*, R. 256 (opinion of Donald Horton, MD, noting Plaintiff is 6' tall and weighs 325 pounds), 276, 279 (opinions of Michael Brown, MD, noting Plaintiff is "overly nourished," 6' tall, 310 pounds), 289 (opinion of J. Arden Blough, MD, noting Plaintiff is 6' tall and weighs 310 pounds). The Tenth Circuit has indicated that an ALJ's consideration of obesity is sufficient where the ALJ's RFC is consistent with a physician's assessment that was "apparently predicated"

upon, among other things, the claimant's obesity. *See Fagan*, 231 F. App'x at 838; *see also Briggs v. Astrue*, 221 F. App'x 767, 770-71 (10th Cir. 2007) (rejecting argument that ALJ failed to comply with SSR 02-1p by not identifying obesity as a severe impairment when the ALJ acknowledged evidence in which physicians noted Plaintiff's obese condition); *cf. Arles v. Astrue*, 438 F. App'x 735, 740 (10th Cir. 2011) (upholding ALJ's evaluation of obesity where RFC was more limited than that expressed in opinion of two medical consultants). Plaintiff directs the Court to no medical opinion that was even partially inconsistent with the ALJ's RFC determination.

The ALJ's conclusion is further supported by the evidence showing that Plaintiff consistently weighed over 300 pounds when he was performing his previous job as a manager trainee—a light-exertion job that the ALJ determined Plaintiff retained the RFC to perform. The same is true of the period when Plaintiff was performing his previous job of forklift operator—a medium-exertion job. *See* R. 150 (Plaintiff reporting he worked these two jobs between 1998 and 2011); *see, e.g.*, R. 256, 257, 264, 283, 289, 292, 297, 298, 299, 320, 321, 322, 324, 325, 326, 327, 329, 330, 331, 333, 334, 336, 337, 396. The Tenth Circuit has indicated that a claimant's ability to perform certain work while obese is a legitimate factor to consider in evaluating a subsequent claim of obesity-related disability. *See Cowan v. Astrue*, 552 F.3d 1182, 1191 (10th Cir. 2008) (upholding ALJ's discounting of claimant's credibility where ALJ had found that claimant's previous time spent working while having certain impairments "suggest[ed] these conditions would not currently prevent work" (internal quotation marks omitted)); *Romero v. Astrue*, 242 F. App'x 536, 542 (10th Cir. 2007) (finding ALJ's consideration of obesity adequate where evidence and testimony

7

indicated that claimant's weight at disability onset date "was essentially the same as it had been for a number of years, including during the time she was working"); *cf. DeWitt v. Astrue*, 381 F. App'x 782, 785-86 (10th Cir. 2010) (finding ALJ's evaluation of obesity insufficient where ALJ noted that claimant had worked while obese but claimant claimed obesity as an impairment and ALJ specifically determined that obesity was a severe impairment).

While Plaintiff broadly asserts on appeal that his obesity "has an impact on" his lumbar disc injury, his ability to perform daily activities, and his ability to perform light work, Plaintiff does not direct the Court to medical or nonmedical evidence of such an impact. Plaintiff's argument regarding SSR 02-1p is not accompanied by a single citation to any evidence of record. *See* Pl.'s Br. at 4-7. As such,

> [Plaintiff] . . . has failed to do more than suggest that the ALJ should have speculated about the impact [his] obesity may have on [his] other impairments. SSR 02-01p, however, specifically prohibits adjudicators from engaging in such speculation:
>> [W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

*Fagan*, 231 F. App'x at 838 (second alteration in original) (quoting SSR 02-1p, 2002 WL 34686281, at *6); *accord Arles*, 438 F. App'x at 740 (finding ALJ's discussion of the effect of obesity on claimant's RFC adequate where claimant did "not discuss or cite to any evidence showing that obesity further limited his ability to perform" the work encompassed by the ALJ's RFC finding); *Romero*, 242 F. App'x at 542 (upholding ALJ's consideration

of obesity where "none of the medical evidence identified any specific restriction on [claimant's] ability to work attributable to obesity"); *cf. Briggs*, 221 F. App'x at 771 (agreeing with conclusion of magistrate judge that "[b]ecause there is no evidence regarding obesity in the record that the ALJ failed to consider or that the ALJ improperly considered, Plaintiff's contention of error on the part of the ALJ for failing to specifically identify obesity as a severe impairment at step two is without merit" (internal quotation marks omitted)). In sum, in light of the total absence of cited evidence that Plaintiff's obesity affects his ability to work, and the ALJ's discussion of medical opinion and other evidence indicating that it does not, the ALJ's consideration of Plaintiff's obesity was adequate.

Moreover, even if the ALJ's analysis was not expressed in compliance with SSR 02-1p, the ALJ was under no affirmative duty to consider obesity given that Plaintiff did not claim it as a disabling impairment. In his applications for disability benefits, Plaintiff did not list obesity as an impairment. R. 149, 168, 178, 185. At the hearing, Plaintiff stated that his weight had been an issue, and agreed that his doctors had talked to him about losing weight to help with his back problems, but he did not state whether or how his obesity had affected his ability to work. R. 38-39.[1] In *Callicoatt v. Astrue*, the Tenth Circuit declined to find that an ALJ "has an affirmative legal duty to consider a claimant's obesity when it was not asserted by the claimant." *Callicoatt*, 296 F. App'x 700, 702 (10th Cir. 2008); *cf. Briggs*, 221 F. App'x at 770-71 (upholding ALJ's consideration of obesity and noting that Plaintiff had not addressed his obesity in his benefits application or at the hearing before the ALJ); *Romero*, 242 F. App'x at 542 (upholding ALJ's consideration of obesity where

---

[1] Plaintiff also testified that he "can have surgery" to help with his back. R. 38-39.

Plaintiff "did not allege disability based on obesity"). Here, as in *Callicoatt*,

> Appellant points to no evidence in the medical record (or in [his] hearing testimony for that matter), showing that [his] obesity exacerbated [his] other impairments. Without some evidence that [his] obesity was relevant to [his] other alleged impairments during the relevant time frame, the ALJ was not required to consider the claimant's obesity.

*Callicoatt*, 296 F. App'x at 702. Accordingly, even assuming that the ALJ's discussion of Plaintiff's obesity was inadequate under SSR 02-1p, "the error was harmless in this case." *Id.* Although the Tenth Circuit has indicated that harmless-error analysis may not be appropriate where the claimant's obesity was raised to the ALJ and was determined to be a severe impairment, *see DeWitt*, 381 F. App'x at 786, neither of those factors applies here. Plaintiff did not claim obesity as an impairment and (as discussed above) the ALJ did not find that obesity was a severe impairment. R. 21, 149, 168, 178, 185. "Nor did Plaintiff testify that his weight contributed to his inability to engage in activities in any way" or "attribute any of [his] restrictions to obesity in [his] testimony at the hearing." *Briggs*, 221 F. App'x at 771 (internal quotation marks omitted); *Romero*, 242 F. App'x at 542; *see* R. 38-39.[2]

For all of these reasons, "[a]lthough the ALJ did not reference SSR 02-01p or explicitly examine the impact of [Plaintiff's] obesity on each of" his other impairments, the undersigned has "reviewed the record and do[es] not believe these omissions require a remand under the facts of this case." *Fagan*, 231 F. App'x at 837.

---

[2] Plaintiff cites *Stack v. Barnhart*, 327 F. Supp. 2d 1175 (C.D. Cal. 2004), to support the proposition that notwithstanding his failure to claim obesity as a disabling impairment, the ALJ breached his duty to consider the effects of obesity on Plaintiff's other impairments. *See* Pl.'s Br. at 5. This decision, from a district court in another circuit, is unpersuasive in light of the authority cited above.

### B. *Plaintiff's Credibility*

The assessment of a claimant's RFC at step four generally requires the ALJ to "make a finding about the credibility of the individual's statements about [a medically determinable impairment's] symptom(s) and its functional effects." SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Plaintiff contends that the ALJ erred by failing to closely and affirmatively link his credibility findings regarding Plaintiff's allegations of "the intensity, persistence, and functionally limiting effects of the symptoms" associated with his medically determinable impairments to specific, substantial evidence in the record. Pl.'s Br. at 7, 8; *see* SSR 96-7p, 1996 WL 374186, at *1. This argument implicates the framework for the proper analysis of a claimant's evidence of pain and other subjective symptoms, as first set forth in *Luna v. Bowen*, 834 F.2d 161, 163-66 (10th Cir. 1987), and more recently summarized in *Wilson v. Astrue*, 602 F.3d 1136, 1144-45 (10th Cir. 2010).

Plaintiff concedes that the ALJ discussed much of the medical evidence and hearing testimony in connection with his credibility assessment but argues that "the way the ALJ did it was all wrong." Pl.'s Br. at 8. Plaintiff argues that the ALJ supplied no "reasons" for finding that Plaintiff was not credible and "wholly failed to specify any proper evidence that caused him to disbelieve [Plaintiff]." Pl.'s Br. at 8. The undersigned disagrees for the reasons outlined below.

In his RFC finding, the ALJ noted that whenever Plaintiff's "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the

credibility of the statements based on a consideration of the entire case record." R. 22-23. The ALJ proceeded to summarize the medical evidence, the nonmedical evidence, and Plaintiff's hearing testimony in great detail. R. 22-28. The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the RFC assessment. R. 24. Relevant to Plaintiff's credibility, the ALJ further stated that he "has considered the claimant's complaints as directed by SSR 96-7p, but finds that the allegations of significant limitations in the ability to perform basic work related activities [are] not credible to the extent allege[d]." R. 26. The ALJ stated that he "considered the combination of all the claimant's medically determinable impairments in reaching this conclusion." R. 26-27.

In reaching these conclusions, the ALJ noted that Plaintiff had "not had any permanent substantiated limitations or restrictions placed on his ability to perform basic work activities by any treating or examining physicians." R. 27. Citing to various items in the record, the ALJ noted: Plaintiff has had no emergency room treatment or hospitalization and has sought only minimal private medical care since his alleged onset date; Plaintiff "has not always been compliant with treatment, medications, and in dieting and exercising"; and Plaintiff himself "has described daily activities that are not limited to the extent one would expect given the complaints of disabling symptoms and limitations"—e.g., driving his daughter to school, shopping, using a riding lawn mower, doing some household chores, preparing meals, and fishing. R. 23, 27; *see* R. 168-75.

The ALJ also discussed evidence reflecting that Plaintiff at various times "had close to optimal control of his diabetes." R. 26, 27; *see* R. 400, 403, 406, 413, 416, 419.

Read in the context of the entire decision, the ALJ's view toward the credibility of Plaintiff's subjective complaints is not purely conclusory and is sufficiently "linked to substantial evidence." *See Wilson*, 602 F.3d at 1144-45. Plaintiff does not allege that the ALJ misstated any of the above evidence, and the decision clearly demonstrates that the ALJ considered multiple factors that may properly support an adverse credibility finding, for example: the treatment received by the claimant; the "location, duration, frequency, and intensity of the [claimant's] pain or other symptoms;" the claimant's ability to engage in daily activities; and a lack of prescribed limitations by physicians. *See* R. 22-28; SSR 96-7p, 1996 WL 374186, at *3; *Wilson*, 602 F.3d at 1146; *Rabon v. Astrue*, 464 F. App'x 732, 735 (10th Cir. 2012). "[S]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, he need not make a formalistic factor-by-factor recitation of the evidence. Again, common sense, not technical perfection, is our guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (citation and internal quotation marks omitted). Further, the Court should not "engage in an impermissible reweighing of the evidence" or "substitute [its] judgment for that of the Commissioner." *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

Plaintiff additionally contends that the ALJ erred in his credibility analysis by improperly formulating Plaintiff's RFC prior to evaluating the hearing testimony and the other evidence in the record and by relying on the RFC to conclude that Plaintiff was less

13

than credible. In support, Plaintiff relies upon a statement by the ALJ to the effect that Plaintiff's statements concerning certain aspects of his symptoms "are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *See* Pl.'s Br. at 7-8. The suggested error commonly is referred to as a "*Bjornson* error,"—i.e., that the ALJ's use of boilerplate language indicates that the ALJ improperly relied upon the already formulated RFC in determining the claimant's credibility. *See Bjornson v. Astrue*, 671 F.3d 640, 644-45 (7th Cir. 2012); SSR 96-7, 1996 WL 374186. Here, however, no such error has been shown. As with the other portions of the analysis in the decision, the ALJ set out his RFC conclusion in bold type, and the analysis undertaken to reach that conclusion (including his credibility finding) follows in plain type. *See* R. 22-28. The fact that the ALJ's discussion of credibility technically appears after the RFC in the written decision does not demonstrate that the ALJ's RFC conclusion preceded, as a matter of sequential reasoning, his underlying analysis. *See Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 796 (10th Cir. 2013) (rejecting claimant's challenge to substantially identical language). The ALJ's use of boilerplate language would be insufficient to sustain the credibility findings "only in the absence of a more thorough analysis." *See id.* (internal quotation marks omitted). As explained above, the ALJ did surround his credibility finding with a thorough analysis, citing specific items of evidence and discussing how this evidence undermined Plaintiff's credibility regarding his subjective complaints and limitations. *See* R. 22-28.

The underlying findings in the ALJ's credibility assessment are supported by substantial evidence. Reversal is not warranted on this basis.

*C. The ALJ's Evaluation of Pre-Onset Evidence*

Finally, Plaintiff argues that the ALJ "used the wrong evidence" by "giv[ing] great weight to the opinions of [Plaintiff's] treating and examining physicians due to their treatment history and degree of contact with Plaintiff." Pl.'s Br. at 8-9; R. 27. Plaintiff asserts that "[t]he problem with [the ALJ's] treatment of this evidence is that he cited opinions from 2007 and 2009" and, because Plaintiff's alleged disability onset date was in June 2011, "[t]his case must be remanded for the ALJ to determine what opinions should receive what weight for the adjudicative period." Pl.'s Br. at 9 (citing R. 21).

The language quoted above is essentially Plaintiff's entire argument on this point: he cites no authority for the proposition that the ALJ could not properly consider physicians' opinions that predated the disability period. To obtain judicial review, it is insufficient to simply "suggest dissatisfaction" or merely mention an issue in the context of another matter. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994). Plaintiff's hint of an argument fails to develop a sufficient legal or factual basis for reversal, and the undersigned will not speculate or develop appellate arguments on his behalf. *See id.*; *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003).

Further, Plaintiff does not challenge the ALJ's stated basis for assigning great weight to the treating and examining physicians' opinions—i.e., the physicians' "treatment history and degree of contact with" Plaintiff and the opinions' "consisten[cy] with the medical documentation in its entirety." R. 27. The regulations recognize these reasons as valid and necessary factors for the ALJ to consider in evaluating physicians' opinions. *See, e.g.*, 20 C.F.R. § 404.1527(c)(2), (4). Moreover, the regulations

15

contemplate that an ALJ will consider opinions issued prior to the application date (and therefore prior to the disability onset date). *See* 20 C.F.R. § 404.1512(d) (requiring SSA to develop a claimant's "complete medical history for *at least* the 12 months preceding" the date of application (emphasis added)).

Plaintiff offers no adequate reason that unspecified "opinions from 2007 and 2009" were "the wrong evidence," especially as the ALJ placed these opinions in proper context by (i) expressly noting that certain items of evidence preceded the onset date, *see* R. 24, 25, and (ii) also relying on many items of evidence that were generated after the onset date, *see* R. 22, 23-24, 25-26. Pl.'s Br. at 8-9. Plaintiff is not entitled to remand on this basis.

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Any such objections must be filed with the Clerk of this Court by September 9, 2015. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 26th day of August, 2015.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE